Janice R. LACHANCE, Director, Office of Personnel Management, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

No. 97–3450.

United States Court of Appeals, Federal Circuit.

June 24, 1998.

Patricia M. McCarthy, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, argued for petitioner. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Di-

rector. Of counsel was Bryant G. Snee, Attorney. Of counsel on the brief were Mary S. Mitchelson, Deputy General Counsel, Steven E. Abow, Senior Attorney, and Ana A. Mazzi, Attorney, Office of the General Counsel, Office of Personnel Management, Washington, DC.

Eric D. Flores, Attorney, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. With him on the brief were Mary L. Jennings, General Counsel, and Martha B. Schneider, Assistant General Counsel.

Before RICH, LOURIE and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This case arose after the Department of the Treasury demoted an employee based on two charges of misconduct. On the employee's appeal, the Merit Systems Protection Board construed one of the two charges as requiring the agency to prove that the employee intended to impede its investigation and held that the agency failed to prove the charge as so construed. The Office of Personnel Management (OPM) petitioned for review by this court, arguing that the Board had improperly construed the charge. We agree with OPM that the Board erred when it required the agency to prove that the employee intended to impede an agency investigation. We therefore reverse the Board's decision and remand the case to the Board for further proceedings.

I

Lieutenant Stuart A. Crouse was a Supervisory Police Officer in the Security Division of the United States Mint, an agency within the Department of the Treasury. Agency policy requires Mint employees to remove their shoes and go through a magnetometer before leaving a Mint facility. If the magnetometer alarm is activated, the employee must re-enter the magnetometer until cleared by the police officer on duty.

On August 31, 1993, while Sergeant Susan Scheppler was the supervisor on duty at the employee exit of the San Francisco Mint, Lieutenant Crouse went through the magnetometer without removing his shoes. When the magnetometer alarm sounded, he did not return to be cleared. Sergeant Scheppler followed Lieutenant Crouse and told him that he had activated the magnetometer. Lieutenant Crouse did not return for further examination, however, and instead left the building. Lieutenant Crouse's conduct at the time of his departure from the Mint facility on August 31, 1993, formed the basis for the agency's first charge against him—violating Mint security procedures. That charge was sustained, and it is no longer at issue in this case.

The second charge against Lieutenant Crouse, which is the focus of the dispute between the parties, was labeled "Unacceptable and Inappropriate Behavior By a Supervisor." That charge arose from events that occurred two days after the improper departure incident. The agency alleged that on September 2, 1993, Lieutenant Crouse learned that the agency was investigating his improper departure from the Mint facility. Shortly thereafter, Lieutenant Crouse asked Sergeant Scheppler if she would speak with him "off the record." The agency's notice of charges alleged that Lieutenant Crouse then stepped into a room with Sergeant Scheppler, closed the door part way, and "stood very close to her and stated in a harsh manner" that whatever she said about the incident to those conducting the investigation could be used against him and that "she needed to be very careful of what she said to them" because "they were trying to fire [him] and that [his] career was on the line." The agency further alleged that while Lieutenant Crouse was making those statements, he was pointing at Sergeant Scheppler's chest with his fingers. According to the notice of charges, she "felt threatened by [his] actions because she feared retaliation when she cooperated in an investigation of [his] conduct."

The notice of charges went on to explain why the agency considered the alleged conduct to constitute "unacceptable and inappropriate behavior by a supervisor." It stated:

It appears that you were attempting to persuade Sergeant Scheppler into not cooperating fully in the investigation of your conduct. Even if this was not your intent, you should have realized how your words

and manner would have been perceived by a subordinate employee who was being asked in the investigation of this incident to discuss your behavior. Such conduct is especially egregious given that your position as a Supervisory Lieutenant includes, among other responsibilities, evaluation of Sergeant Scheppler's performance, determination of her work assignments, and approval or disapproval of her leave requests.

Based on the two charges, the agency proposed to demote Lieutenant Crouse from his position as Supervisory Police Officer to the position of Police Officer (non-supervisory).

In response to the notice of charges, Lieutenant Crouse argued, through counsel, that the first charge was a technical violation that did not warrant any punishment, and that the second charge was "factually insupportable." He contended that he had not engaged in any conduct toward Sergeant Scheppler that should have caused her to feel intimidated and that "the fact that she claims to have felt intimidated indicates only that she finds cause for intimidation where none exists."

The agency rejected Lieutenant Crouse's arguments, sustained both charges, and demoted him. Lieutenant Crouse then appealed to the Merit Systems Protection Board. At a hearing before an administrative judge, Sergeant Scheppler testified that Lieutenant Crouse told her in a harsh and intimidating tone that whatever she reported about the incident could affect his job because his supervisors were out to get him. She further testified that as Lieutenant Crouse spoke to her he was pointing his forefinger and middle finger at her chest and that she felt intimidated because of his manner, his actions, and his tone.

The administrative judge sustained the first charge against Lieutenant Crouse, but not the second. Although the second charge was identified in the agency's proposal and decision notices as "unacceptable and inappropriate behavior by a supervisor," the administrative judge characterized the charge as "unacceptable and inappropriate behavior as a supervisor *with the intent to impede or interfere with an investigation.*" The administrative judge thus construed the charge to require proof that Lieutenant Crouse intended to obstruct the investigation into his

conduct when he approached Sergeant Scheppler.

The administrative judge concluded that the agency had failed to prove that Lieutenant Crouse intended to impede the agency's investigation of his conduct. In particular, she explained that she did not find credible Sergeant Scheppler's "impression that [Lieutenant Crouse] sought to impede or interfere with the investigation," and that Sergeant Scheppler "overreacted to [Lieutenant Crouse's] statements." Based on her analysis of the evidence, the administrative judge concluded that although Lieutenant Crouse "exercised poor judgment when he approached Sergeant Scheppler on this matter," the agency failed to present "preponderant, credible evidence that he intended to interfere with the agency's investigation of the August 31, 1993, incident."

The administrative judge then addressed the question whether Lieutenant Crouse's demotion could stand based on the sole remaining charge against him—that he violated Mint security procedures. Under the circumstances, the administrative judge concluded that the penalty of demotion from his position of Supervisory Police Officer was "beyond the bounds of reasonableness for the one sustained charge." The administrative judge then mitigated the penalty to a 90–day suspension, which she found was the maximum reasonable penalty that could be imposed for that infraction.

The Department of the Treasury petitioned for review of the administrative judge's decision on the second charge, arguing that the administrative judge had erred in requiring the agency to prove that Lieutenant Crouse intended to impede or interfere with the investigation. The Board, however, affirmed the administrative judge's decision. *Crouse v. Department of the Treasury,* 70 M.S.P.R. 623 (1996). The Board held that the administrative judge's characterization of the charge was proper because it was consistent with the specification that accompanied the charge and with the testimony of the proposing and deciding officials at the hearing before the administrative judge.

Following the Board's decision, OPM asked the Board to reconsider its order. *See* 5 U.S.C. §§ 7701(e), 7703(d). The Board denied the petition for reconsideration but wrote a second opinion affirming its earlier decision. *Crouse v. Department of the Treasury,* 75 M.S.P.R. 57 (1997). In its new opinion, the Board again held that the administrative judge had not improperly recharacterized the agency's charge but had simply held the agency to the charge described in the proposal and decision notices. The Board acknowledged that the captioned charge of "unacceptable and inappropriate behavior by a supervisor" does not necessarily indicate intentional misconduct. The Board concluded, however, that the specification accompanying the charge incorporated an element of intent and that it was proper for the Board to construe the charge in light of the specification. Because, in the Board's view, the agency's proposal and decision notices "described the unacceptable and inappropriate conduct charge as an attempt to impede the investigation," *id.* at 64, and because the deciding official's testimony at the hearing supported that interpretation of the proposal and decision notices, the Board concluded that it was proper to require the agency to prove that Lieutenant Crouse intended to impede the investigation in order to sustain the second charge.

■ OPM petitioned this court for review of the Board's decision, and we granted the petition for review. Although Lieutenant Crouse died while the case was pending before the Board, his death does not moot the case. This court has held that OPM may appeal from decisions of the Merit Systems Protection Board even when the employee has no continuing interest in the dispute that gave rise to OPM's appeal, *see Horner v. Merit Sys. Protection Bd.,* 815 F.2d 668, 671 (Fed.Cir.1987), and in any event the disposition of the case may well have an effect on back pay or other benefits payable to Lieutenant Crouse's estate.

II

■ When an agency proposes to discipline an employee, it must notify the employee of the conduct with which he is charged "in sufficient detail to permit the employee to make an informed reply." *Pope v. United States Postal Serv.,* 114 F.3d 1144, 1148 (Fed. Cir.1997); *Brook v. Corrado,* 999 F.2d 523, 526 (Fed.Cir.1993). Agencies typically fulfill their responsibility to give notice by designating a particular charge and accompanying the charge with a narrative description setting forth the details of the charged misconduct. If the agency designates a specific charge as the basis for the proposed discipline, it must prove all the elements of that charge, even if those elements go beyond the factual allegations set forth in the accompanying narrative description. *See King v. Nazelrod,* 43 F.3d 663, 666 (Fed.Cir.1994); *Burroughs v. Department of the Army,* 918 F.2d 170, 172 (Fed.Cir.1990). The agency, however, is not required to prove all the facts that it alleges in support of its charge. In particular, "where more than one event or factual specification is set out to support a single charge . . ., proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge." *Burroughs,* 918 F.2d at 172; *see also Otero v. United States Postal Serv.,* 73 M.S.P.R. 198, 204 (1997).

■ OPM argues that intent is not an element of the second charge against Lieutenant Crouse, which was labeled "Unacceptable and Inappropriate Behavior By a Supervisor." For that reason, OPM argues, the Board was wrong to require the agency to prove that Lieutenant Crouse intended to obstruct an agency investigation. That argument, however, is too broad. The charge of "unacceptable and inappropriate behavior" is entirely unspecific; when an agency uses such general charging language, the Board must look to the specification to determine what conduct the agency is relying on as the basis for its proposed disciplinary action. *See Huisman v. Department of the Air Force,* 35 M.S.P.R. 378, 380–81 (1987) (employee charged with "misconduct"; Board looked to specification to determine true nature of the charge).

If the Board were prohibited from ever looking to the specification to help define the charged conduct, the notice requirement would lose much of its value in cases in which agencies use general charge labels such as "unacceptable and inappropriate behavior" or "misconduct." Where the charge label pro-

vides no meaningful description of the charge, an agency would be free to prove any conduct generally relating to the conduct described in the specification, as long as that conduct could be characterized as "inappropriate" or "misconduct." Such a regime would be inconsistent with due process, and the Board has properly declined to endorse it. *Cf. Brook v. Corrado,* 999 F.2d at 527 (due process requires agencies to provide employees with meaningful notice of the charges against them).

█ In support of its contention that the Board may never refer to the specification to determine the elements of the charge against an employee, OPM relies on this court's decision in *King v. Nazelrod,* 43 F.3d 663 (Fed. Cir.1994). *Nazelrod,* however, does not stand for that proposition. In *Nazelrod,* the agency charged the employee with theft, and we held that the agency was therefore required to prove all the elements of the offense of theft. We rejected the agency's argument that it was not required to prove the elements of the designated charge as long as it proved the conduct alleged in the specification. Contrary to the government's contention, however, we did not address whether the Board may construe a general charge in accordance with the specification if the effect of the specification is to require proof of additional elements. Thus, if the agency charges an employee with inappropriate behavior by a supervisor and the specification alleges that the supervisor stole another employee's property, *Nazelrod* does not prohibit the Board from requiring the agency to prove the offense of theft, rather than some lesser offense such as temporarily borrowing property without permission. In fact, *Nazelrod* supports the Board's position on this issue, not OPM's. The principle underlying *Nazelrod* is that the agency must prove what it charges; where the specification contains the only meaningful description of the charge, *Nazelrod* supports the Board's conclusion that the agency must prove what it has alleged in the specification.

OPM further argues that the Board's ruling is inconsistent with this court's decision in *King v. Frazier,* 77 F.3d 1361 (Fed.Cir. 1996). Again, we disagree. In *Frazier,* an arbitrator ruled that an employee must act intentionally in order to be guilty of the offense of engaging in "notoriously disgraceful conduct." We reversed, holding that the charge of "notoriously disgraceful conduct" does not necessarily require proof of intent. 77 F.3d at 1363–64. Nothing in *Frazier,* however, suggests that whenever an agency uses a general charge, such as "notoriously disgraceful conduct," it need not prove intent, even if the specific disgraceful conduct designated in the underlying specification incorporates an element of intent.

█ Based on the principles discussed above, we conclude that if the specification had referred only to Lieutenant Crouse's alleged intent to impede the agency's investigation, it would have been proper for the Board to require the agency to prove intent on Lieutenant Crouse's part. We therefore reject OPM's contention that because intent is not an "element" of the charge of "unacceptable and inappropriate behavior by a supervisor," it was improper for the Board to require the agency to prove intent. Nonetheless, we reverse the Board's decision in this case because we conclude that the Board erred in ruling that the specification required the agency to prove that Lieutenant Crouse intended to impede the agency's investigation.

The Board treats the specification as if it had alleged only that Lieutenant Crouse acted with intent to impede the agency's investigation. The specification, however, was not so limited. Rather, the agency set forth two alternative characterizations of the second charge against Lieutenant Crouse. First, it alleged that Lieutenant Crouse was attempting to persuade Sergeant Scheppler not to cooperate fully with the investigation. Second, it alleged that even if that was not Lieutenant Crouse's intent, his actions were improper because he should have known that, as his subordinate, Sergeant Scheppler would perceive his conduct as intimidating.

After finding that the agency failed to prove that Lieutenant Crouse intended to impede the investigation, the administrative judge held the entire charge to be unsupported, rather than going on to consider whether the agency had proved that Lieutenant Crouse should have known that Sergeant Scheppler would perceive his conduct as in-

timidating. That was error. If that alternative statement of the basis for the second charge is sufficient to constitute "unacceptable and inappropriate behavior by a supervisor"—an issue the parties have not addressed at this juncture—the Board must determine whether the evidence offered by the agency was sufficient to prove that allegation and thus to sustain the charge.

The Board argues that the narrative description of the second charge against Lieutenant Crouse makes clear that the "unacceptable and inappropriate behavior" in question was attempted obstruction of an agency investigation, which requires proof of an intent to impede its investigation. In support of that characterization of the charge, the Board points to language in both the proposal and decision notices as well as the testimony of the proposing and deciding officials at the hearing before the administrative judge.

Contrary to the Board's contention, the proposal and decision notices did not characterize the charge against Lieutenant Crouse as requiring proof of intent to impede the agency's investigation. Instead, both the proposal notice and the decision notice made clear that, while the agency believed that Lieutenant Crouse had acted with intent to impede the investigation, that allegation was not an essential part of the charge against him. As we have noted, the proposing and deciding officials stated that "[i]t appears that you were attempting to persuade Sergeant Scheppler into not cooperating fully in the investigation of your conduct." But each document then added, "Even if this was not your intent, you should have realized how your words and manner would have been perceived by a subordinate employee who was being asked in the investigation of this incident to discuss your behavior." By setting out the charge in alternative terms, the agency made clear that, although it was prepared to prove culpable intent, it did not regard such proof as an essential part of the charge against Lieutenant Crouse.

The above-quoted portion of the proposal and decision notices is clear enough, but another portion of the decision notice removes all doubt as to the nature of the charge. In response to Lieutenant Crouse's argument that his conduct should not have caused Sergeant Scheppler to feel intimidated, the decision notice explained, "You were charged with 'Unacceptable and Inappropriate Behavior By a Supervisor,' not with attempted intimidation." The notice thus confirmed that the agency did not regard an attempt to intimidate Sergeant Scheppler, and thereby to impede the investigation, as an essential element of the charged offense; rather, it was sufficient for the agency to show that Lieutenant Crouse should have appreciated that Sergeant Scheppler would interpret his conduct as intimidating in nature.

■ The Board responds by pointing to the testimony of the proposing and deciding officials at the hearing before the administrative judge, in which both officials characterized the conduct of Lieutenant Crouse that was the subject of the second charge as attempted intimidation of a subordinate and attempted obstruction of an investigation. While such testimony may help determine the nature of a charge when the charge itself is ambiguous, we do not regard the charge in this case to be ambiguous at all. Moreover, the proposing and deciding officials were not purporting to give a precise and comprehensive statement of the charges against Lieutenant Crouse, but were simply summarizing the allegations as they understood them. Their testimony does not provide a sufficient basis for disregarding the language of the specification and committing the agency to a narrower charge than the one set forth in the proposal and decision notices. Rather, based on the language in the notices, we construe the charge of "unacceptable and inappropriate behavior by a supervisor," as applied to Lieutenant Crouse's case, to require either proof of an intent to impede an investigation or proof that Lieutenant Crouse "should have realized how [his] words and manner would have been perceived by a subordinate employee who was being asked in the investigation of this incident to discuss [his] behavior."

■ The Board further contends that because both the proposing and the deciding officials testified that they regarded the alleged obstruction of the investigation as the aspect of the charge against Lieutenant Crouse that most clearly justified his demotion, upholding the second charge based only

**1374**

on less culpable conduct would result in sustaining a penalty that was based on much more serious conduct than the agency was able to prove.

■ While the Board raises a legitimate concern, that concern is best dealt with by assessing the reasonableness of the penalty in light of the agency's proof, rather than by holding the second charge to be unsubstantiated. The proper approach is for the Board to consider, first, whether the agency proved that Lieutenant Crouse engaged in unacceptable and inappropriate behavior, and then to decide whether the particular unacceptable and inappropriate behavior that was proved justifies the penalty imposed by the agency. If the penalty that the agency imposed was greater than the maximum reasonable penalty for the conduct that the agency proved, the Board may mitigate the penalty without the need to hold that the underlying charge is unsupported. Thus, even if the Board sustains the second charge on the ground that Lieutenant Crouse should have known that his actions would be regarded as intimidating, the Board must still consider whether the penalty of demotion is excessive for that conduct together with the conduct proved under the first charge. *See Webster v. Department of the Army,* 911 F.2d 679, 688 (Fed.Cir.1990); *Parker v. United States Postal Serv.,* 819 F.2d 1113, 1116 (Fed.Cir. 1987); *Douglas v. Veterans Admin.,* 5 MSPB 313, 5 M.S.P.R. 280, 306–08 (1981).

In accordance with this analysis, we remand this case to the Board to consider whether, independent of the absence of intent on the part of Lieutenant Crouse to impede the agency's investigation, the charge of unacceptable and inappropriate behavior by a supervisor can be sustained and, if so, whether the penalty assessed by the agency was reasonable in light of that charge, in combination with the charge of violating agency security procedures.

*REVERSED and REMANDED.*