## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| KEISHA HUDSON,<br>       Appellant, | DOCKET NUMBER<br>PH-0752-18-0261-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br>   SECURITY,<br>       Agency. | DATE: March 13, 2024 |

## THIS ORDER IS NONPRECEDENTIAL[1]

Faye R. Cohen, Esquire, Philadelphia, Pennsylvania, for the appellant.

Joseph Rieu, Esquire, Arlington, Virginia, for the agency.

Julie L. Kitze, Esquire, Philadelphia, Pennsylvania, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained her removal. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was formerly employed as a Transportation Security Specialist - Explosives Detection Canine Handler, SV-1801, at Philadelphia International Airport. Initial Appeal File (IAF), Tab 4, Subtab 4a. By notice dated February 27, 2018, the agency proposed to remove the appellant on charges of lack of candor (three specifications) and unprofessional conduct. *Id.*, Subtab 4d. Under the lack of candor charge, the agency alleged that on November 1, 2, and 8, 2017, the appellant told agency officials that she had been interviewed by unnamed individuals and that she subsequently admitted in a November 22, 2017 written statement that no such interviews occurred. *Id.* at 2-3. The charge of unprofessional conduct was based on an October 27, 2017 text exchange between the appellant and a coworker, in which, according to the agency, the two conspired to submit a false incident report and workers' compensation claim.[2] *Id.* at 4-5.

The appellant provided a written response, in which she argued that the text message conversation with her coworker also included protected equal employment opportunity (EEO) activity, specifically, her efforts to assist her coworker in pursuing a potential hostile work environment claim, and that her removal would constitute unlawful retaliation for that protected activity. *Id.*, Subtab 4c at 5. By letter dated March 23, 2018, the deciding official notified the appellant of his decision to remove her, effective that same day. *Id.*, Subtab 4b.

---

[2] The agency cited three messages in particular. In the first, the appellant wrote, "Hang on till Monday. You can have a breakdown and be covered under workers comp." IAF, Tab 4, Subtab 4d at 65. In the second, the appellant wrote, "Yup, that's why I want you to wait until Monday. I will you [sic] find you in a bathroom crying, call you an ambulance and I'll write the incident report dictating what I saw/heard. You will be on the payroll for the rest of your life." *Id.* In the following message, the appellant wrote, "Once I dial 911 it can't be reversed or we will both be unemployed." *Id.* at 66.

The appellant filed a timely Board appeal, in which she explicitly raised an affirmative defense of retaliation for protected EEO activity. IAF, Tab 1 at 4. In his summary of the prehearing conference, the administrative judge noted that the appellant's retaliation claim was among the issues to be adjudicated, IAF, Tab 12 at 2, and the appellant again asserted the defense at the hearing, Hearing Compact Disc (HCD) (closing statement by the appellant's representative). Following the hearing, the administrative judge issued an initial decision affirming the removal action. IAF, Tab 19, Initial Decision (ID). In reaching that result, the administrative judge sustained the charges, found a nexus between the appellant's conduct and the efficiency of the service, and further found that the removal penalty was within the bounds of reasonableness. ID at 3-7. However, the initial decision did not address the appellant's retaliation claim.

On petition for review, the appellant objects to the initial decision on the following grounds: (1) the administrative judge failed to address her affirmative defense of retaliation for protected EEO activity; (2) the administrative judge did not make a credibility determination concerning her hearing testimony; and (3) the administrative judge erred in his *Douglas* factors[3] analysis by failing to address the appellant's claim of disparate penalties. Petition for Review (PFR) File, Tab 1. The agency has responded to the appellant's petition. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

The charge of unprofessional conduct requires proof that the appellant intended to defraud the agency, and the administrative judge must make an explicit credibility determination concerning the appellant's testimony that she did not so intend.

When an agency uses general charging language such as "unprofessional conduct," the Board must look to the specification to determine what conduct the agency is relying on as the basis for its proposed disciplinary action. *See*

---

[3] In *Douglas v. Veterans Administration,* 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of factors relevant to the penalty determination in adverse action cases.

*Lachance v. Merit Systems Protection Board*, 147 F.3d 1367, 1371 (Fed. Cir. 1998) (interpreting charge of "unacceptable and inappropriate behavior by a supervisor"). Here, in the underlying specification, the agency alleges that, on October 27, 2017, the appellant and her coworker "planned to submit a false incident report and worker's compensation claim." IAF, Tab 4, Subtab 4b at 4, Subtab 4d at 4. The specification further states that the appellant "had a pre-meditated plan to submit a false incident report" and that she was "influencing a co-worker to file a false workers' compensation claim as well." *Id.* Considering the repeated use of the word "false," we conclude that, to prove its charge, the agency must show by preponderant evidence that the appellant planned to commit an act of falsification.[4] *See Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶¶ 16-18 (2009) (finding that, despite using a general charge, the agency was required to prove the elements of falsification where the underlying specifications repeatedly used the word "false" in describing the appellant's statements).

To prove a charge of falsification, the agency must show by preponderant evidence that the appellant knowingly provided wrong information with the intention of defrauding, deceiving, or misleading the agency. *Naekel v. Department of Transportation*, 782 F.2d 975, 977 (Fed. Cir. 1986). *Boltz*, 111 M.S.P.R. 568, ¶ 19. Although the agency has not alleged that the appellant carried out the plan to file a false incident report and have her coworker file a false workers' compensation claim, the specification clearly implies that she hatched the plan with fraudulent intent. Thus, the agency must establish that

_____

[4] We recognize that the proposal and decision letters also include some statements that, taken alone, could support the proposition that the agency did not charge the appellant with intentional falsification, but we find that these statements do not overcome the clear references to falsification elsewhere in the specification. *See Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶ 18 (2009); *cf. Lachance*, 147 F.3d at 1372 (finding that a showing of intent was not required where the agency alleged that the appellant acted with intent to impede an investigation but also clearly stated, as an alternative basis for the charge, that his conduct would have been unacceptable and inappropriate behavior "[e]ven if this was not [his] intent").

element of intent in order to prove its charge. *See Lachance*, 147 F.3d at 1371-72 (observing that, while intent is not necessarily an element of a general charge, a showing of intent may be required if the conduct described in the specification itself includes an element of intent).

The appellant testified at the hearing that she did not intend to file a false incident report or for her coworker to file a false workers' compensation claim and that her October 27, 2017 text message was a "ruse" to prevent the coworker from harming herself over the weekend. HCD (testimony of the appellant). The administrative judge did not credit that testimony, finding that, "[w]hile the appellant would like the intent to be interpreted more innocently, the text message exchange seems to clearly law out a plan for [the coworker] to defraud the agency through the instruction of the appellant." ID at 4.

While we do not necessarily disagree with that finding, we agree with the appellant that the administrative judge should not have discredited her testimony without making an explicit credibility determination, addressing the applicable *Hillen* factors.[5] *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (holding that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests). Accordingly, on remand, the administrative judge should make an explicit credibility determination, supported by an analysis of the relevant *Hillen* factors, including, if appropriate, his

---

[5] In *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987), the Board held that, to resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Id.* at 458.

observations of witness demeanor, and make a new finding on the merits of the charge, as construed above.[6]

## The appeal must be remanded for adjudication of the appellant's claim of retaliation for protected EEO activity.

In a case such as this one, in which the appellant has been affected by an appealable action and alleges that a basis for the action was discrimination prohibited by 42 U.S.C. § 2000e-16, the Board is required by statute to decide both the issue of discrimination and the appealable action. 5 U.S.C. § 7702(a)(1). Here, the appellant has raised a claim that her removal was the result of retaliation for protected Title VII activity,[7] which constitutes a violation of 42 U.S.C. § 2000e-16. *See Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 36-37 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. The Board has a statutory obligation to

---

[6] We discern no error in the administrative judge's finding that the agency proved the charge of lack of candor. A charge of lack of candor requires proof of the following elements: (1) that the employee gave incorrect or incomplete information; and (2) that she did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016). The parties have stipulated that the appellant engaged in the charged misconduct, namely, that on November 1, 2, and 8, 2017, she told agency officials that she had been interviewed by unnamed individuals and that she subsequently admitted in a November 22, 2017 statement that these interviews never took place. IAF, Tab 16 at 5-6 (stipulations 6-7, 9), Tab 4, Subtab 4d at 24-28 (the appellant's November 22, 2017 statement); *see* 5 C.F.R. § 1201.63 (providing that the parties may stipulate to any matter of fact and that the stipulation will satisfy a party's burden of proving the fact alleged). The appellant was presumably aware at the time she made her inaccurate statements that the interviews had not occurred.

[7] In portions of the text message conversation between the appellant and her coworker, which was relayed to management before the agency proposed the removal action, the appellant appears to have engaged in protected activity under 5 U.S.C. § 2302(b)(1) by offering her coworker advice and resources on pursuing a Title VII hostile work environment complaint. IAF, Tab 4, Subtab 4d at 74-79; *see In re Frazier*, 1 M.S.P.R. 163, 191 n.36 (1979) (noting that 42 U.S.C. § 2000e-16, referenced in 5 U.S.C. § 2302(b)(1), includes claims of reprisal for opposition to employment practices made unlawful by Title VII), *aff'd,* 672 F.2d 150 (D.C. Cir. 1982); *see also Parnell v. Department of the Army*, 58 M.S.P.R. 128, 131 (1993) (citing *Frazier*). This is not to say, however, that the entirety of the conversation constitutes protected activity.

adjudicate that claim, and the administrative judge erred in not addressing it in his initial decision. *See Spithaler*, 1 M.S.P.R. at 589.

On remand, the administrative judge should adjudicate the appellant's claim of retaliation for protected EEO activity consistent with the Board's recent decision in *Pridgen v. Office of Management and Budget*, 2022 MSPB 31. To prove such a claim, the appellant must show that reprisal was a motivating factor in the contested action, i.e., that reprisal played "any part" in the agency's action or decision. *Pridgen*, 2022 MSPB 31, ¶¶ 21, 30.

<u>In the event the administrative judge finds that the appellant did not establish her affirmative defense, he should consider her claim of disparate penalties in assessing the reasonableness of the penalty</u>.

In addressing the *Douglas* factors, the administrative judge did not address the appellant's disparate penalties claim. This was error. *See Spithaler*, 1 M.S.P.R. at 589. In the event the administrative judge finds that the appellant did not establish her affirmative defense, he should revise the penalty analysis to address the appellant's disparate penalties claim in accordance with our recently issued decision in *Singh v. U.S. Postal Service*, 2022 MSPB 15.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.[8]

FOR THE BOARD:                    _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.

---

[8] In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.