# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SHAKAYLA Q. STEWART,<br>Appellant, | DOCKET NUMBER<br>AT-0752-23-0534-I-1 |
| v. | |
| U.S. POSTAL SERVICE,<br>Agency. | DATE:  April 21, 2026 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Steve Newman</u>, Esquire, New York, New York, for the appellant.

<u>Glenn H. Washington</u>, Dallas, Georgia, for the appellant.

<u>Bobbi Mihal</u>, Esquire, St. Louis, Missouri, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained her reduction in pay and grade after finding that the agency proved its charge of improper conduct, nexus, and the reasonableness of the penalty.  For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was an EAS-21 Manager, Customer Services at the Atlanta Midtown Station. Initial Appeal File (IAF), Tab 8 at 26. In August 2022, the appellant's subordinate at the time, J.T., complained to agency management that he was sexually harassed by the appellant. *Id.* at 51-56, 84-87. The agency's Office of the Inspector General (OIG) began an investigation. *Id.* at 80-99. On September 16, 2022, agents from OIG attempted to interview the appellant in connection with J.T.'s complaint, but the appellant declined to participate after being advised that the interview was "strictly voluntary." *Id.* at 97-99.

Separately, the agency conducted an Initial Management Inquiry Process (IMIP), between October 3 and November 10, 2022. *Id.* at 46, 51-63. As part of the IMIP investigation into J.T.'s allegations, the agency interviewed the appellant, J.T., and seven of their colleagues. *Id.* at 51-63. In connection with potential discipline, the appellant's first-level supervisor conducted investigative interviews with the appellant on December 2 and 9, 2022. *Id.* at 24, 27-30, 37-45.

On April 7, 2023, the appellant's first-level supervisor proposed to demote the appellant from her EAS-21 position of Manager, Customer Services, with a salary of $92,702.00, to an EAS-17 Supervisor, Customer Services position, with a salary of $83,431.80, based on a charge of improper conduct. *Id.* at 20. The agency's charge of improper conduct contained five specifications involving the appellant's behavior toward J.T. and a sixth specification alleging that the appellant failed to cooperate in the agency's investigation into the matter. *Id.* at 20-21. On June 22, 2023, the deciding official found that the charge was "supported fully by the evidence and warrant[ed] [the appellant's] reduction in pay/grade." *Id.* at 13. The appellant was demoted to Supervisor, Customer Services, effective June 24, 2023. *Id.* at 13, 15.

The appellant timely filed the instant appeal, challenging her reduction in pay and grade. IAF, Tab 1 at 4. She argued that the agency violated its own procedures by using the OIG report to support its action and that there was no "indication[] that she acted unprofessionally or misrepresent[ed] the Postal Service in any manner." *Id.* at 6. The appellant also insinuated that J.T. only accused her of misconduct because she removed him for poor attendance. IAF, Tab 3 at 1.

The administrative judge held a hearing. IAF, Tab 22 at 4, Tab 24. Following the hearing, the administrative judge issued an initial decision that affirmed the appellant's reduction in pay and grade. IAF, Tab 25, Initial Decision (ID) at 1, 15. In doing so, the administrative judge sustained the charge of improper conduct and all six specifications. ID at 3-12. She also found that the agency proved that a nexus existed between the appellant's conduct and the efficiency of the service. ID at 12-13. Finally, the administrative judge found that the deciding official properly considered the relevant factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), and that the penalty of a demotion was within the bounds of reasonableness. ID at 13-15.

The appellant has timely filed a petition for review. Petition for Review (PFR) File, Tab 1. On review, the appellant disputes the administrative judge's conclusion that the agency proved its charge. Specifically, she argues that the administrative judge erred by crediting J.T.'s statements regarding the incidents alleged in specifications 1 through 5 over the appellant's explanations. *Id.* She also disagrees with the administrative judge that the agency proved, as alleged in specification 6, that the appellant did not cooperate when questioned by her first-level supervisor about her conduct. *Id.* at 1-3. She alleges that the administrative judge was biased against her. *Id.* at 1. The agency has responded to the petition for review. PFR File, Tab 3.

### DISCUSSION OF ARGUMENTS ON REVIEW

<u>We vacate the initial decision and remand this appeal for the administrative judge to make more complete credibility findings regarding the agency's charge.</u>

The appellant argues that in sustaining the charge of improper conduct, the administrative judge made erroneous findings of material facts. PFR File, Tab 1 at 3. To resolve credibility issues between witnesses, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which versions she believes, and explain in detail why she found the chosen versions more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

The Board generally must give deference to an administrative judge's implicit or explicit demeanor-based credibility findings. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). However, the Board does not owe deference when such findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004); *see Fulton v. Department of the Army*, 95 M.S.P.R. 79, ¶¶ 17-18 (2003) (remanding an individual right of action appeal for an administrative judge to consider the appellant's allegation that the official who proposed his suspension expressed resentment regarding the appellant's disclosures, an allegation that the administrative judge did not mention in the initial decision); *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as

the authorities on which that reasoning rests). As explained below, we conclude that the administrative judge's findings did not account for all of the evidence in the record and therefore were incomplete. We remand the appeal for more complete findings.

*Specification 1*

In specification 1, the agency alleged that the appellant sent "explicit photographs and/or videos of [her]self to . . . [J.T.]." IAF, Tab 8 at 20. The record contains one photo and one video that J.T. testified the appellant sent directly to him. IAF, Tab 8 at 70, Tab 10-1, Tab 24-1, Hearing Recording Pt. 1 (HR-1) (testimony of J.T.). The photo is of the appellant in a bathroom showing her buttocks, and the video showed the appellant dancing while lifting her dress to reveal her buttocks. IAF, Tab 8 at 90, 105, Tab 10-1; HR-1 (testimony of J.T.). OIG Special Agent K.B. testified that after interviewing J.T., and based on her own proficiency with Instagram, it was her opinion that the appellant shared the photograph and video with J.T. directly and privately. IAF, Tab 24-2, Hearing Recording Pt. 2 (HR-2) (testimony of K.B.). The administrative judge credited J.T.'s and K.B.'s testimony over that of the appellant, in which she denied sending the photo and video in question to J.T. ID at 7.

The administrative judge found that the appellant's testimony that J.T. obtained the photo and video from her Instagram account was inherently improbable based largely on K.B.'s testimony, which was informed by her personal Instagram use. ID at 4-5, 7. Aside from regarding the appellant's testimony as self-serving, which is addressed more fully below, the administrative judge did not explain the basis for this conclusion, and we do not share her assessment. ID at 7.

The administrative judge credited K.B.'s testimony that it was unlikely that J.T. obtained the photo and video from the appellant's Instagram because K.B. did not see either when she viewed the appellant's Instagram profile during the OIG investigation. HR-2 (testimony of K.B.). She also testified that the image

and photo were unlikely to be from the appellant's Instagram account because a screenshotted image or screen-recorded video would bear indicia that it was from Instagram. *Id.* We are not persuaded that K.B.'s testimony either supports J.T.'s testimony that the appellant directly sent him the photo and video at issue or disproves the appellant's explanation that J.T. took the images from her Instagram page or story. PFR File, Tab 1 at 1.

On remand, the administrative judge may find K.B.'s testimony regarding her own experience with Instagram has some value as hearsay evidence. *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-84 (1981) (stating that hearsay evidence is admissible in Board proceedings and the assessment of its probative value necessarily depends on the circumstances of each case). But speculative testimony is entitled to little or no weight and cannot outweigh the testimony of those with first-hand knowledge of the relevant facts. *See Johnson v. Department of Health and Human Services*, 22 M.S.P.R. 521, 522-23, 528-30 (1984) (finding that the speculative testimony of an appellant's witnesses was insufficient to rebut the presumption that the appellant's indefinite suspension following his indictment for violent sexual crimes bore a nexus to the efficiency of the service); *Borninkhof*, 5 M.S.P.R. at 87 (noting, among the factors relevant to weighing hearsay evidence, the availability of persons with first-hand knowledge to testify at the hearing); *see also Hillen*, 35 M.S.P.R. at 458 (listing a witness's opportunity and capacity to observe the event or act in question among the relevant factors an administrative judge should consider in resolving credibility issues). K.B.'s conclusion that J.T. obtained the video directly from the appellant is speculative, and it is insufficient to support the testimony of J.T. or rebut the appellant's testimony on this point. Rather, the administrative judge must weigh the testimony of J.T. against that of the appellant as to how J.T. came into possession of the subject images. In this context, K.B.'s testimony regarding what she observed on the appellant's Instagram page and the lack of indicia on the photo and video that she received from J.T. is evidence that the administrative

judge may consider in reaching her own conclusion as to whether the agency met its burden to prove its charge. However, the administrative judge must reach her own conclusion as to how J.T. came to possess the images in question without relying on K.B.'s conjecture on the issue.

We also disagree with the administrative judge's finding that the appellant's denial that she sent the images in question was "inherently improbable." ID at 7. The appellant could have deleted posts on her Instagram page that included the images in question before either the OIG or IMIP investigations began. She could also have posted the photo or video to her Instagram "Story," resulting in its automatic deletion after 24 hours. Social Media Academy, *What Is the Difference Between Instagram Reels, Feed Posts, Stories & Highlights and What Are the Benefits of Each?*, LinkedIn (July 9, 2024), https://www.linkedin.com/pulse/what-difference-between-instagram-reels-feed-posts-stories-ktefc/. The appellant explained in her testimony and reargues on review that on a public profile like hers, anyone can view these stories and screenshot a photo or save a video. IAF, Tab 24-3, Hearing Recording Pt. 3 (HR-3) (testimony of the appellant); PFR File, Tab 1 at 1. According to the appellant, once saved, the photo and video could be cropped or otherwise edited to omit any indicia that it came from Instagram. HR-3 (testimony of the appellant); PFR File, Tab 1 at 1.

Further supporting the appellant's testimony that J.T. obtained the photo and video from her public Instagram profile is the consistency with which the appellant has stated as much. IAF, Tab 8 at 21, 41-42; HR-3 (testimony of the appellant); PFR File, Tab 1 at 1. Thus, we find nothing inherently improbable in the appellant's version of events, and the administrative judge erred in making her credibility finding without further explanation. *Barrett v. Department of the Interior*, 54 M.S.P.R. 356, 362 (1992) (concluding that an administrative judge erred in finding an appellant's version of events improbable without explanation).

On remand, the administrative judge should also revisit the issue of bias on the part of J.T. and the appellant. The administrative judge determined that the appellant's testimony was not credible because her "motivation to maintain her prior grade and pay [was] uncontroverted." ID at 7. Although the appellant's bias is one of many factors to consider in assessing her credibility, most testimony that an appellant is likely to give, other than admissions, can be characterized as self-serving, and her testimony should not be discredited solely on that basis. *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 25 (2015). The initial decision appears to place too much emphasis on the appellant's bias, to the exclusion of other *Hillen* factors.

As to J.T.'s potential bias, the appellant twice proposed his removal for his attendance-related issues. IAF, Tab 3 at 1, Tab 8 at 43, 63; HR-3 (testimony of the appellant). Although the administrative judge acknowledged witness testimony on this point, she did not indicate how it affected her credibility determinations. ID at 5, 11. According to the appellant, J.T. only raised concerns about her behavior after he was removed on the second occasion. IAF, Tab 3 at 1, Tab 8 at 63, 84; HR-3 (testimony of the appellant).

The administrative judge should also address, in her remand initial decision, J.T.'s inconsistent statements and the contradiction of his version of events by other evidence. J.T. told the agency alternatively that the appellant texted him the photo and video and that she sent them via Instagram direct message. IAF, Tab 8 at 70, 74, 85-86. But the only text messages in the record between J.T. and the appellant, which J.T. provided to the agency, were work-related and devoid of sexual or romantic content. *Id.* at 72-79.

Further, J.T.'s testimony regarding how he received the photo and video were not "steadfast[]" as maintained by the administrative judge. ID at 4. When pressed at the hearing, J.T. suggested that he could not verify whether the photo was directly sent to him because "he doesn't have that phone anymore." HR-1 (testimony of J.T.). He also claimed he could no longer access the photo and

video because the appellant deleted the Instagram messages that included them. *Id.* When shown the video at the hearing, J.T. stated that he could not recall if it was sent directly to him because there were similar videos on the appellant's public profile, which "everybody had." *Id.* He also testified that several of his colleagues at that station had access to videos from the appellant's Instagram profile. *Id.*

Evidence also contradicts J.T.'s testimony that he complained to "everyone" about the appellant's actions. *Id.* Statements gathered by the agency from seven of J.T.'s managers and coworkers do not corroborate the same. *Id.*; IAF, Tab 8 at 56-61. These colleagues further denied seeing the appellant behaving in an offensive or inappropriate manner toward J.T. IAF, Tab 8 at 56-61. Some colleagues also expressed that J.T.'s attendance and conduct were poor and described the appellant's workplace demeanor toward J.T. and others as professional. *Id.*

*Specifications 2-5*

In specifications 2 through 5, the agency alleged that the appellant encouraged J.T. to remain at the station while she closed it for the night; told J.T. that, had circumstances been different, it was possible that they could have a romantic or sexual relationship; made inappropriate comments to J.T. referring to the size of his genitals; and flirted with J.T. and rubbed him with her rear in a postal vehicle while accompanying him on his mail deliveries. *Id.* at 20-21. The administrative judge credited J.T.'s testimony regarding these events over that of the appellant and therefore found that the agency proved all four of the specifications. ID at 7-11. We find that the administrative judge's findings again omitted a discussion of critical evidence regarding witness credibility.

In determining that the appellant engaged in the behavior alleged by the agency in specifications 2 through 5, the administrative judge referenced her credibility findings as to specification 1 and reiterated the reasoning for those findings. *Id.* For example, in finding that the appellant asked J.T. to stay at the

station while she locked up and made sexual or romantic comments to J.T. as alleged in the agency's specifications 2 through 4, the administrative judge reasoned in part that such conduct was consistent with the appellant's proven specification 1 conduct of sending J.T. an inappropriate photo and video. ID at 8, 10. The administrative judge again referenced the appellant's motivation to lie to retain her position while not addressing J.T.'s potential motive to retaliate for his removal. ID at 8. Because we have found the credibility determinations underlying the decision to sustain specification 1 to be insufficient, the administrative judge's reasoning likewise cannot form the basis for finding that the appellant engaged in the conduct alleged in specifications 2-5.

Further, the initial decision does not acknowledge J.T.'s uncertainty and inconsistency when testifying regarding the relevant events. In specification 4, for example, the agency alleged that the appellant "asked [J.T.] how big he [was], referring to his genitals, and/or told [J.T.] what size [she] prefer[red]." IAF, Tab 8 at 20. J.T. stated as much in October or November of 2022, when interviewed as part of the agency's IMIP. *Id.* at 52. However, he testified at the hearing in March 2024, less than 2 years later, that he could not recall the exact statements that the appellant made. HR-1 (testimony of J.T.). The administrative judge should acknowledge this apparent inconsistency and, in particular given the memorable nature of J.T.'s allegation, address how his inability to remember the statement impacts his credibility. On the whole, the initial decision would benefit from a more robust discussion of the evidence supporting or contradicting the agency's allegations in specifications 2 through 5, and from an assessment of J.T.'s and the appellant's relevant testimony concerning the underlying facts.

*Specification 6*

The agency alleged in specification 6 that the appellant failed to cooperate in a postal investigation when, on December 2, 2022, during an investigative interview, she refused to answer one or more questions. IAF, Tab 8 at 21-22, 27-30, 37-45. On review, the appellant reargues that she was cooperative during

the IMIP interview and that she was told that she would not be punished for declining to participate in a strictly voluntary OIG interview. PFR File, Tab 1 at 2-3. Throughout the adjudication of her appeal, the appellant has maintained that she had been "extremely cooperative" and that the agency had improperly relied on the OIG report in accusing her of misconduct. IAF, Tab 1 at 6; HR-3 (testimony of the appellant). The administrative judge found that the appellant failed to sit for the OIG interview with K.B. and therefore the agency proved its specification that the appellant did not participate. ID at 12. We find that the administrative judge has misinterpreted specification 6.

When the agency's charged conduct "is entirely unspecific," such as "'unacceptable and inappropriate behavior' . . . the Board must look to the specification to determine what conduct the agency is relying on as the basis for its proposed disciplinary action." *Lachance v. Merit Systems Protection Board*, 147 F.3d 1367, 1371-72 (Fed. Cir. 1998); *see Huisman v. Department of the Air Force*, 35 M.S.P.R. 378, 380-81 (1987) (determining that when an employee is broadly charged with "misconduct," the Board must look to the specification to determine the true nature of the charge). The agency charged the appellant with improper conduct, a broad charge that is established by proving that the employee committed the acts alleged in support of the label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). The agency also labeled specification 6, in bold, with a heading alleging that the appellant "failed to cooperate in a postal investigation when on December 2, 2022, during [the appellant's] investigative interview [she] refused to answer one or more questions." IAF, Tab 8 at 21. The agency then listed examples of questions that the appellant allegedly refused to answer. *Id.* at 21-22.

We interpret the agency's specification as requiring the agency to prove that the appellant refused to answer questions at the December 2, 2022 investigation despite an obligation that she do so. *See Negron v. Department of Justice*, 95 M.S.P.R. 561, ¶¶ 10, 24 (2004) (concluding that an agency proved its

charge of failure to cooperate in an official investigation when the appellant had an obligation under agency standards of conduct to cooperate in such an investigation and he refused to provide a report of his arrest and/or court documents that were in his possession and requested by the agency); *Eichner v. U.S. Postal Service*, 83 M.S.P.R. 202, ¶¶ 5-7 (1999) (concluding that a charge of improper conduct based on failure to obey an order to cooperate in an investigation required the agency to prove that the appellant did not cooperate in an investigation after being ordered to do so). Here, under its label for the specification, the agency went on to list questions that the appellant declined to answer on December 9, 2022, and further faulted her for declining to be interviewed by the OIG on September 16, 2022. IAF, Tab 8 at 20-21, 27-29. Despite this background information, we conclude that the agency was required to prove that the appellant was obligated, but refused, to answer one or more questions on December 2, 2022, the date in its label for specification 6.

The situation here is comparable to one in which an agency labels a charge. Although an agency is not required label a charge, if elects to do so it is bound to prove the elements that make up the legal definition of the charge. *Lachance*, 147 F.3d at 1371-72; *Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶ 16 (2009). We observe that the agency need not also prove that the appellant failed to answer questions at the December 9, 2022 interview. Although those examples are given underneath the specification label, we again analogize to the principle that when an agency labels a charge, it may prove the charge without proving each of the facts supporting it. *See Lachance*, 147 F.3d at 1371.

On remand, the administrative judge should analyze whether the agency proved that the appellant failed to cooperate in the December 2, 2022 interview. If she finds that the appellant's lack of cooperation in the December 2, 2022 interview is insufficient to establish her failure to cooperate in the agency's investigation, she cannot sustain this specification.

<u>The appellant failed to prove her bias claim.</u>

On review, the appellant alleges that the administrative judge exhibited bias against her in a prehearing settlement conference. IAF, Tab 17; PFR File, Tab 1 at 1. We find her allegations do not establish bias.

According to the appellant, during an ex parte settlement discussion, the administrative judge told the appellant that she would have fired her rather than simply demoting her and improperly pressured the appellant to accept a settlement proposal put forth by the agency. IAF, Tab 17; PFR File, Tab 1 at 1. However, statements regarding the relative strengths and weaknesses of a party's case do not indicate bias or coercion when an administrative judge makes them in the context of settlement negotiations. *Chakravorty v. Department of the Air Force*, 90 M.S.P.R. 304, ¶ 8 (2001). In light of the purpose of the discussion, we discern no evidence of bias in the administrative judge's suggestion that the agency's penalty was more than reasonable for the charged misconduct.

## ORDER

For the reasons discussed above, we vacate the initial decision and remand this case to the regional office for further adjudication in accordance with this Remand Order. In her remand initial decision, the administrative judge should consider all of the evidence in the record, and address the concerns cited above, when analyzing if the agency's proved its charge.

The parties do not challenge the administrative judge's finding that the agency proved a nexus between the appellant's conduct and the efficiency of the service. If the administrative judge again sustains the charge in her remand initial decision, she may readopt her prior nexus finding. However, the administrative judge should revisit her findings concerning the agency's penalty, as appropriate. In doing so, the administrative judge should address the appellant's argument that the agency relied on prior discipline that incorrectly reflected her duty station as the Endpoint Post Office. PFR File, Tab 1 at 3; IAF, Tab 8 at 14, 64-67.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.