# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MARK JIMENEZ,
                    Appellant,

            v.

DEPARTMENT OF
      TRANSPORTATION,
                    Agency.

DOCKET NUMBER
SF-0752-19-0069-I-1

DATE: July 3, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Jesse Ortiz</u>, Sacramento, California, for the appellant.

<u>Lindsay M. Nakamura</u>, Esquire, El Segundo, California, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to properly construe and analyze the charge, we AFFIRM the initial decision.

## BACKGROUND

On August 6, 2018, the agency issued a notice proposing to remove the appellant from his Airway Transportation Systems Specialist position with the agency's Federal Aviation Administration, based on a charge of unacceptable conduct (five specifications). Initial Appeal File (IAF), Tab 7 at 101-10. In the first specification, the agency alleged that, between February 2014 and August 2016, the appellant submitted five altered or fabricated Air Force (AF)-938 forms titled "Request for Authorization for Active Duty Training/Active Duty Tour" when he had not been ordered to appear for military duty on the dates listed on the forms.[2] *Id.* at 102. The agency alleged that the appellant falsified the AF-938 forms either by changing his report and/or release dates for military duty, or by altering a previously used AF-938 form to reflect military duty that was completely fabricated. *Id.* For example, the agency alleged that the appellant altered an AF-938 form dated July 31, 2013, by changing the report and release dates for military duty from September 16-18, 2013, to February 24-28, 2014, and

---

[2] During the period at issue, the appellant was a Master Sergeant in the Air Force Reserve Command. IAF, Tab 7 at 101.

then submitted this form, even though no order had been issued directing him to report for military duty from February 24-28, 2014. *Id.*

In specification 2 of the charge, the agency alleged as follows: on nine occasions between March 2014 and May 2016, the appellant submitted Office of Personnel Management Standard Form 71 (SF-71) forms requesting paid military leave totaling 190 hours for the period from February 24, 2014, to April 20, 2016; his military leave requests were approved and the appellant did not report to work on the dates for which leave was requested; these leave requests were based on falsified military orders[3] or were not supported by underlying military orders and, therefore, the appellant knew that he was not entitled to receive paid military leave for the dates listed on the SF-71 forms; and, by placing his electronic signature on each form, the appellant certified that he understood that falsification of the form may be grounds for disciplinary action, including removal. IAF, Tab 7 at 103.

In the third specification, the agency alleged that the appellant was absent without leave (AWOL) for 200 hours because the military leave requests at issue in specification 2, plus an additional military leave request for 10 hours on August 20, 2016, were based on altered AF-938 forms and thus his absence from work on the dates listed on the SF-71 forms was unauthorized. *Id.* at 103-04.

The fourth specification of the charge consists of four parts, each of which involves the appellant's alleged falsification or improper coding of his time and attendance records. IAF, Tab 7 at 104-06. In part A, the agency alleged that, between July 2014 and December 2016, the appellant submitted 17 leave requests for a total of 191 hours that were approved by the agency. *Id.* at 104-05. The agency alleged that, although the appellant did not report to work for the hours of his approved leave, he recorded his time in the agency's timekeeping system to

---

[3] Four of the SF-71 forms at issue in this specification were based on the AF-938 forms described in the first specification. IAF, Tab 7 at 103.

show that he was working those 191 hours and, therefore, no leave was deducted from his leave balance even though he was absent from work. *Id*. at 104.

In part B, the agency alleged that, in four separate instances totaling 90 hours in November and December 2015, the appellant failed to report to work despite not having submitted an SF-71 form requesting leave, and then marked himself as present and working in the agency's timekeeping system. IAF, Tab 7 at 105.

In part C, the agency alleged that, although the appellant exhausted his 120 allowable hours of military leave for Fiscal Year 2016 as of January 4, 2016, in May, July and August of 2016, he improperly coded his time and attendance record for military leave totaling 70 hours. *Id.*

In part D, the agency alleged that the appellant falsified his time and attendance records to reflect that he worked on Sunday, when he did not. IAF, Tab 7 at 105-06. The agency alleged that, as a result, the appellant was paid 90 hours of Sunday premium pay he was not entitled to receive. *Id.*

In the fifth specification of the charge, the agency alleged that the appellant was not forthcoming and candid during an Office of Inspector General (OIG) investigation into his alleged misconduct, as evidenced by the transcript of his April 28, 2017 interview. IAF, Tab 7 at 106.

After the appellant responded to the proposal, IAF, Tab 7 at 38-100, the proposing official, who was also the deciding official, found that the agency proved the charge in its entirety with the exception of part D of specification 4 pertaining to premium pay, *id.* at 32, and issued a decision removing the appellant effective October 10, 2018, *id.* at 31-37.

The appellant filed an appeal of his removal with the Board. IAF, Tab 1. He initially requested a hearing but subsequently withdrew his request. *Id.* at 2, Tab 39. The appellant stipulated to the facts underlying the specifications of the charge. IAF, Tab 36 at 4, 6; Tab 38 at 1. He raised an affirmative defense of

retaliation for his prior equal employment opportunity (EEO) activity.[4]   IAF, Tab 35 at 7.

Based on the written record, the administrative judge issued an initial decision that affirmed the appellant's removal.  IAF, Tab 44, Initial Decision (ID) at 1, 16.  The administrative judge found that: the agency proved the charge by preponderant evidence, ID at 10; the appellant did not prove his affirmative defense, ID at 10-12; and the penalty of removal is reasonable and promotes the efficiency of the service, ID at 12-16.

The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The agency has responded to the petition.  PFR File, Tab 3.

**ANALYSIS**

We modify the administrative judge's analysis of the unacceptable conduct charge, still finding that the agency proved the charge.

In analyzing the unacceptable conduct charge, the administrative judge stated that, to prove this charge, the agency must show that the appellant engaged in the conduct with which he is charged.  ID at 10.  The administrative judge noted that the parties stipulated to the facts as set forth in the specifications of the charge, and he found the parties' stipulations sufficient to prove all of the specifications.  *Id.*; IAF, Tab 36 at 6, Tab 38 at 1.  The administrative judge further found that the actions described in the specifications constitute unacceptable conduct.  ID at 10.  Therefore, the administrative judge found, the agency proved the charge.  *Id.*

Although the appellant does not challenge this finding on review,[5] PFR File, Tab 1 at 4-5, we find that the administrative judge incorrectly interpreted the

---

[4] As discussed further below, the appellant initially raised other affirmative defenses, including retaliation for filing a grievance and discrimination based on his race and national origin, but withdrew those affirmative defenses during the prehearing conference.  IAF, Tab 1 at 4, Tab 14 at 1, Tab 17 at 6, Tab 35 at 7.

[5] The appellant also does not challenge the administrative judge's finding that the agency proved that there is a nexus between the charge and the efficiency of the service. PFR File, Tab 1 at 4-5; ID at 12-13.  We discern no reason to disturb this finding.

charge. Where, as here, the agency has employed a generic label for the charge, the Board must look to the specifications to determine what conduct is the basis for the charge. *Lachance v. Merit Systems Protection Board*, 147 F.3d 1367, 1372 (Fed. Cir. 1998). In resolving the issue of how a charge should be construed and what elements require proof, the Board examines the structure and language of the proposal notice and the decision notice. *See Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶ 16 (2009) (finding that, although the agency used the general charge of inappropriate behavior, the specifications and circumstances showed that the agency charged the appellant with intentional falsification; thus the agency was required to prove the elements of falsification).

*Falsification*

Based on our review of the record, we find that specifications 1, 2, and 4 should be construed as a falsification charge. As set forth above, in specification 1, the agency explicitly alleged that the appellant falsified AF-938 forms on five separate occasions either by changing his report and/or release dates for military duty, or by altering a previously used AF-938 form to reflect military duty that was completely fabricated. IAF, Tab 7 at 102. The agency also alleged that the appellant then submitted these altered or fabricated forms even though he had not been ordered to appear for military duty on the dates listed on the forms. *Id.*

In specification 2, the agency alleged that the appellant submitted SF-71 forms requesting paid military leave; however, these leave requests were based on falsified military orders or were not supported by underlying military orders and, therefore, the appellant knew that he was not entitled to receive paid military leave for the dates listed on the SF-71 forms. IAF, Tab 7 at 103. The agency further alleged that, by placing his electronic signature on each form, the appellant certified that he understood that falsification of the form may be grounds for discipline. *Id.*

As for the fourth specification, the agency alleged that the appellant falsified his time and attendance records by recording his time in the agency's timekeeping system to show that he was working during hours in which he had not reported to work; thus, no leave was deducted from his leave balance even though he was absent from work. IAF, Tab 7 at 104-06.

In addition to the specifications, the notice of proposed removal included a section entitled "Discussion" in which the proposing official addressed the appellant's misconduct in greater detail. *Id.* at 106-09. The proposing official alleged that the appellant altered military documents, which he then submitted to management "with the intent to deceive for [his] own material gain of being absent from work without actually performing military duty, and without using any of [his] accrued leave." *Id.* at 108. The proposing official also noted that the appellant admitted to altering his military orders by printing out a date, which he then cut and pasted onto an AF-938, and then making a photocopy of the form. *Id.*; IAF, Tab 8 at 195-96.

The proposing official further alleged that the appellant's submission of leave requests after the date for which leave was requested and his failure to properly enter his time in the agency's timekeeping system indicated that he was intentionally deceptive and knowingly made false entries in the timekeeping system. IAF, Tab 7 at 107. She alleged that the appellant was attempting to obfuscate the truth of his time and attendance by submitting leave requests and then not recording the leave taken in the system. *Id.* The proposing official stated that she did not believe that this was simple error or misunderstanding. *Id.*

In sum, although the agency charged the appellant with unacceptable conduct, these specifications and the accompanying discussion of the appellant's actions show that the agency charged the appellant with falsification of his military orders and his time and attendance records. *See George v. Department of the Army*, 104 M.S.P.R. 596, ¶ 8 (2007), *aff'd*, 263 F. App'x 889 (Fed. Cir. 2008).

To establish a charge of falsification, the agency must prove the following by preponderant evidence: (1) the appellant supplied incorrect information; and (2) he did so knowingly with intent to defraud, deceive, or mislead the agency for his own private material gain. *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶¶ 10-12 (2014). Whether the element of intent has been proven must be resolved from the totality of the circumstances. *See Rodriguez v. Department of Homeland Security*, 108 M.S.P.R. 525, ¶ 9 (2008); *Blake v. Department of Justice*, 81 M.S.P.R. 394, ¶ 27 (1999). Intent may be inferred when a misrepresentation is made with reckless disregard for the truth or with a conscious purpose to avoid learning the truth. *See Haebe v. Department of Justice*, 81 M.S.P.R. 167, ¶ 17 (1999), *rev'd on other grounds*, 288 F.3d 1288 (Fed. Cir. 2002).

The record shows that the appellant intended to deceive the agency by altering AF-938 forms and submitting them to management. In his April 28, 2017 interview with OIG agents, the appellant stated that he altered the forms so that he could have extra time to work out and calm down. IAF, Tab 8 at 195-96; Tab 28 at 111. We find that the appellant's admission that he altered these documents so that he could take additional time off without using his leave is sufficiently probative to establish that he knowingly supplied incorrect information with the intention of defrauding, deceiving, or misleading the agency for his own material gain. *See Hoofman v. Department of the Army*, 118 M.S.P.R. 532, ¶¶ 9-10 (2012) (finding that the appellant's admission that he had been drinking and was in the driver's seat of the vehicle with the engine running and the charging police officer's affidavit were sufficiently probative to prove that he had been driving under the influence), *aff'd*, 526 F. App'x 982 (Fed. Cir. 2013). Accordingly, we find that the agency proved the falsification charge.

*AWOL*

We next consider specification 3, which charged the appellant with 200 hours of AWOL. IAF, Tab 7 at 103-04. The agency alleged that, because the appellant's leave requests for those hours were based on altered AF-938 forms, his absence from work on the dates listed those leave requests was unauthorized. *Id.* at 103.

To prove an AWOL charge, an agency must demonstrate that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 28 n.5 (2015), *overruled in part on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. Here, it is undisputed that the military leave requests were based on military orders which had been falsified to reflect that the appellant had military duty on days when he did not. IAF, Tab 36 at 6. Given these circumstances, we find that the appellant's absence on those days was unauthorized. Accordingly, we find that the agency proved this charge.

*Lack of Candor*

For specification 5, the agency alleged that the appellant was "not fully forthcoming and candid during the course of the OIG investigation into [his] misconduct . . . as evidenced by the transcript of [his] interview conducted on April 28, 2017." IAF, Tab 7 at 106, Tab 8 at 106-278. In particular, the agency alleged the appellant was evasive and non-responsive when questioned as to whether he had altered the AF-938 forms so that he could take extra days off work. IAF, Tab 7 at 106.

We find that this specification charges the appellant with lack of candor, as the agency alleged that the appellant acted with a level of intent to knowingly give incomplete or inaccurate information to the interviewers. IAF, Tab 7 at 106. *Id.* To prove a lack of candor charge, the agency must prove that an appellant was not fully forthcoming and candid as to all facts and information relevant to

the matter at issue, whether or not such information was specifically elicited. *See Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). Lack of candor may involve a failure to disclose something that, in the circumstances, should have been disclosed to make a statement accurate and complete. *Id*. Although a lack of candor charge does not require an affirmative misrepresentation, it does involve an element of deception, and an agency alleging lack of candor must prove the appellant knowingly gave incorrect or incomplete information. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶¶ 16-17 (2016).

The record reflects that the appellant admitted that he was not honest during the first half of his OIG interview because he was "apprehensive" but that he later "came clean" at the end of his interview. IAF, Tab 28 at 106-07. Thus, we find that the agency has proven that the appellant knowingly provided incorrect or incomplete information during his OIG interview.

## The appellant failed to prove his affirmative defense of retaliation for EEO activity.

On review, the appellant contends that the administrative judge erred in finding that he failed to prove his affirmative defense of reprisal for his prior EEO activity. PFR File, Tab 1; ID at 10-12. As explained in the initial decision, the protected EEO activity at issue consists of the appellant seeking EEO counseling on July 6, 2018, regarding his claim that he was wrongfully denied a promotion, and engaging in a mediation session on October 3, 2018. PFR File, Tab 1 at 8-10; IAF, Tab 42 at 9-10. He argues that, because the agency knew of his misconduct before his EEO activity, but did not remove him until after, retaliatory motive can be inferred. PFR File, Tab 1 at 10. We are not persuaded.

Although the appellant cites the *Warren* standard[6] in arguing that he proved his EEO reprisal claim, the *Warren* standard is not applicable here. PFR File, Tab 1 at 8-10. The record shows that the appellant's underlying EEO activity involved claims of discrimination based on race and color. IAF, Tab 7 at 20. To prove an affirmative defense of retaliation for such Title VII EEO activity, the appellant must show that retaliation was a motivating factor in the agency's decision. *Pridgen*, 2022 MSPB 31, ¶¶ 19-21, 30. An appellant may prove his claim by a combination of direct or indirect evidence, including suspicious timing, statements, or actions by agency officials from which an inference of discrimination might be drawn, evidence concerning the agency's treatment of similarly situated individuals outside the appellant's protected class, and evidence that the agency's stated reasons for the action were pretextual. *Id*. ¶ 24.

The administrative judge found that it was undisputed that the appellant engaged in EEO activity by seeking EEO counseling prior to the removal decision and by engaging in a mediation session. ID at 11. However, he found that the appellant failed to prove by preponderant evidence that retaliation was a motivating factor in his removal because there was no evidence that would support a finding of retaliation for prior EEO activity. ID at 11-12. In doing so, the administrative judge considered the appellant's argument that the retaliatory motive could be inferred based on the temporal proximity between the activity but did not find it persuasive based on the record evidence. ID at 12. We agree.

The record contains the unchallenged declaration and supporting emails of a Human Resources Specialist who was assigned to assist the proposing and deciding official with facilitating the appellant's removal. IAF, Tab 41 at 20-27. This evidence reflects that the proposing official authorized the drafting of the

---

[6] Under the *Warren* standard, for an appellant to prevail on an affirmative defense of retaliation for protected activity, he must show that (1) he engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action. *See Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986).

notice of the proposed removal on April 17, 2018, prior to the appellant engaging in protected EEO activity when he sought EEO counseling on July 6, 2018, or filed his EEO complaint on November 6, 2018. IAF, Tab 7 at 19-21, Tab 41 at 20-21. She then, in her role as deciding official, decided to remove the appellant after reviewing his August 21, 2018 written reply but prior to the EEO mediation on October 3, 2018. IAF, Tab 7 at 22, 27, Tab 41 at 20, 23-25, 27. Moreover, the appellant identified no direct evidence of retaliation for EEO activity or comparator evidence, and he stipulated to the facts underlying the specifications in support of the removal action. In light of these considerations, and considering the evidence as a whole, we agree with the administrative judge's conclusion that the appellant has not shown that his EEO activity was a motivating factor in his removal. ID at 11-12.

 The appellant waived his affirmative defense of reprisal for filing a grievance.

The appellant appears to reassert his affirmative defense of reprisal for filing a grievance on review. PFR File, Tab 1 at 9; IAF, Tab 7 at 12-14. In *Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶¶ 17-18, we set forth a set of nonexhaustive factors for consideration when determining whether an appellant will be deemed to have waived or abandoned a previously raised affirmative defense. The factors include: (1) the thoroughness and clarity with which the appellant raised his affirmative defense; (2) the degree to which the appellant continued to pursue his affirmative defense in the proceedings below after initially raising it; (3) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when he was specifically afforded an opportunity to object and the consequences of his failure were made clear; (4) whether the appellant raised his affirmative defense or the administrative judge's processing of the affirmative defense claim in his petition for review; (5) whether the appellant was represented during the course of his appeal before the administrative judge and on petition for review, and if he was not, the level of knowledge of Board proceedings possessed by the appellant; and

(6) the likelihood that the presumptive abandonment of the affirmative defense was the product of confusion, or misleading or incorrect information provided by the agency or the Board. *Id.*, ¶ 18.

As indicated in the prehearing conference summary, the appellant, through his attorney, clarified that the only affirmative defense he was raising was retaliation for his prior EEO activity and he withdrew his affirmative defenses of reprisal for filing a grievance and discrimination on the basis of his race and national origin. IAF, Tab 35 at 7. The appellant had the opportunity to object to the administrative judge's prehearing conference summary but did not. *Id.* Subsequently, he stipulated that he was limiting his affirmative defense claim to retaliation based on his EEO complaint, in which he alleged that he was wrongfully denied a promotion. IAF, Tab 36 at 6, Tab 38 at 1.

Throughout this appeal, the appellant was represented by an attorney and there is no evidence that his waiver of these affirmative defenses was due to confusion or misleading or incorrect information provided by the administrative judge or the agency. When weighing all these factors together, we find that the appellant waived the affirmative defense of reprisal for filing a grievance and we will not consider this issue further.

We do not consider the appellant's laches claim.

The appellant also appears to raise an affirmative defense of laches on review, arguing that the agency improperly delayed issuing the proposed removal. PFR File, Tab 1 at 9-10. The record reflects that the appellant first raised this argument in his April 5, 2019 closing brief.[7] IAF, Tab 42 at 10. Because the appellant submitted his closing brief after the March 22, 2019 deadline for filing an objection to administrative judge's ruling in the prehearing conference summary that the Board would consider no affirmative defense other than the appellant's EEO retaliation claim, IAF, Tab 35 at 7, the administrative judge

---

[7] The appellant's closing brief is largely the same as his petition for review. *Compare* IAF, Tab 42 at 6-10, *with* PFR File, Tab 1 at 5-10.

properly did not address this affirmative defense on review, and we do not address it here.

<u>The administrative judge correctly found that the penalty of removal was reasonable.</u>

On review, the appellant also alleges that the penalty of removal was too severe and should have been mitigated to a "written or verbal reprimand, remedial training, suspension and/or demotion." PFR File, Tab 1 at 7. He also disagrees with the administrative judge's finding that the deciding official properly considered certain *Douglas* factors and seeks to reweigh the factors. *Id.* at 5-8.

When, as here, the agency's charge has been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant *Douglas* factors and exercised management discretion within tolerable limits of reasonableness.[8] *Portner v. Department of Justice*, 119 M.S.P.R. 365, ¶ 10 (2013), *overruled on other grounds by Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 17. In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Id.* The Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.*

The appellant first asserts that his removal should have been mitigated because he has an exemplary work record with no prior discipline, a history of leadership, and has been recognized for his achievements in the past. PFR File, Tab 1 at 5-6. As observed by the administrative judge, the deciding official properly considered these mitigating factors, in addition to the appellant's military service, but determined that they were "not sufficient to overcome the pattern of completely unacceptable conduct described in the proposal." ID at 14;

---

[8] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of factors relevant to the penalty determination in adverse actions.

IAF, Tab 7 at 32, 34. The appellant reasserts his argument that his situation is "nearly identical" to the facts in *Gleason v. Federal Deposit Insurance Corporation*, 29 M.S.P.R. 330 (1985), in which the Board, relying on the appellant's prior 22 years of service with the agency, found that the penalty of removal was excessive and substituted a more appropriate penalty in its place. PFR File, Tab 1 at 5-6; IAF, Tab 42 at 6. The administrative judge considered this argument below and determined that *Gleason* was distinguishable from the instant appeal. ID at 15. We agree.

In *Gleason*, the Board mitigated the penalty of removal to a 60-day suspension for an appellant with 22 years of Federal service when only one charge of falsification of travel vouchers was sustained, which resulted in the appellant receiving $8.10 to which he was not entitled. *Gleason*, 29 M.S.P.R. 330, 331 & n.1. Here, as observed by the administrative judge, the appellant engaged in a pattern of misconduct over a 2-year period which resulted in significant material gain to the appellant. ID at 15. The record reflects that the appellant received approximately $15,000 of excess pay for hours he did not actually work. IAF, Tab 7 at 109. Therefore, we agree with the administrative judge's determination that *Gleason* is distinguishable from the facts of this appeal and does not provide a basis to mitigate the penalty.

Next, the appellant reasserts his argument that the offense for which he was charged has no negative effect on his ability to technically perform his job duties at a satisfactory level. PFR File, Tab 1 at 6-7; IAF, Tab 42 at 7-8. However, the deciding official considered the impact of his misconduct on the performance of his job duties. IAF, Tab 7 at 33. She noted that he is "responsible to make judgment calls that influence the safety of hundreds of aircrafts daily" and she emphasized the importance of his ability to follow the agency's policies and procedures. *Id.* Ultimately, she determined that she had lost confidence in her ability to trust the appellant's judgment and honesty. *Id.*

The appellant also argues that his penalty should be mitigated because he accepted responsibility for the charge and has vowed to never repeat it. PFR File, Tab 1 at 6-7; IAF, Tab 42 at 7-8. However, the administrative judge agreed with the deciding official's assessment that the appellant had failed to take full responsibility for his actions. ID at 15; IAF, Tab 7 at 33. The deciding official noted that the appellant's "lack of true remorse" is apparent by how he minimized the misconduct, such as calling it a "lapse in judgment," and that his characterization of the separate court proceeding indicated to her that he "fail[ed] to accept responsibility for or recognize the severity of [his] misconduct."[9] IAF, Tab 7 at 33. Thus, she properly considered these factors.

The appellant also argues that the agency has not demonstrated that the penalty of removal is consistent with the agency's penalty table. PFR File, Tab 1 at 7; IAF, Tab 42 at 8-9. The administrative judge found that the appellant, contrary to his argument on review, failed to demonstrate that removal was inconsistent with the agency's table of penalties. ID at 15. We agree. As observed by the administrative judge, the table of penalties lists removal as a sanction for first offenses involving, as applicable here, forgery, providing false or misleading information on government records, or lack of candor. ID at 15; IAF, Tab 9 at 194-95. We observe that, although the table of penalties does not include a penalty for the general charge of "unacceptable conduct," it does include penalties for the underlying conduct as described in the specifications. IAF, Tab 9 at 194-203. Thus, removal is consistent with the agency's penalty table.[10]

---

[9] On January 24, 2018, the appellant pled guilty to a misdemeanor count for violation of California Penal Code section 487(A) (Grand Theft). IAF, Tab 23 at 5, Tab 9 at 229.

[10] Similarly, the appellant asserts that the agency did not demonstrate that the imposed penalty was consistent with those imposed on other employees. PFR File, Tab 1 at 7; IAF, Tab 42 at 8. However, in order to trigger the agency's burden, the appellant must show that the charge and circumstances surrounding the charge are substantially similar to those committed by a comparator. *See Voss v. U.S. Postal Service*, 119 M.S.P.R. 324, ¶ 6 (2013). Here, the appellant did not identify a comparator and thus the agency's burden was not triggered. *Id*

Finally, the appellant argues that the agency did not meet its burden of establishing that there was no less drastic alternative sanction that could have been taken to deter the conduct at issue. PFR File, Tab 1 at 7-8. However, the deciding official, who was also the proposing official, stated that she "considered proposing a lesser penalty," but that "the severity and duration of [the] misconduct warrant[ed] nothing less than a proposed removal." IAF, Tab 7 at 108. Thus, alternative sanctions were properly considered but deemed inappropriate due to the severity of the conduct charged.

In light of the above, we agree with the administrative judge that the deciding official correctly weighed the relevant *Douglas* factors, and that the penalty of removal was reasonable. *See Scheffler v. Department of Army*, 117 M.S.P.R. 499, ¶ 16 (2012) (recognizing that the Board has consistently held that the penalty of removal for falsification and dishonest activity is within the bounds of reasonableness because such activity raises serious doubts regarding the appellant's reliability, trustworthiness, and continued fitness for employment), *aff'd per curiam*, 522 F. App'x 913 (Fed. Cir. 2013).

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b) (9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12] . The court of appeals must <u>receive</u> your petition for

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of <u>the date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                                    _____
                                                 Gina K. Grippando
                                                 Clerk of the Board

Washington, D.C.