**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DARLENE WEST, | DOCKET NUMBER |
| Appellant, | AT-0752-19-0755-I-1 |
| v. | |
| SMALL BUSINESS | DATE:  January 27, 2025 |
| ADMINISTRATION, | |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Adam P. Morel, Esquire, Birmingham, Alabama, for the appellant.

Claudine Landry, Esquire, and Ashley E. Obando, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman*
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

*The Board members voted on this decision before January 20, 2025.

**FINAL ORDER**

The agency has filed a petition for review of the initial decision, which reversed the appellant's removal and found that she failed to prove her claim of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

retaliation for equal employment opportunity (EEO) activity. For the reasons explained below, we DENY the petition for review. We REVERSE the initial decision insofar as it found that the agency did not prove the charge of conduct unbecoming a Government employee and AFFIRM the initial decision as modified to FIND the agency did not establish nexus between the appellant's off-duty misconduct and the efficiency of the service and that the appellant abandoned her claim of age discrimination, and to supplement the administrative judge's analysis of the appellant's claim of reprisal for EEO activity, still finding that the appellant failed to prove her claim.

## BACKGROUND

The appellant was employed as a Loan Specialist with the Birmingham Disaster Loan Servicing Center. Initial Appeal File (IAF), Tab 1 at 8. On June 2, 2017, officers from the Jefferson County Sheriff's Office arrested the appellant for an incident that occurred at her house and charged her with attempted murder and shooting or discharging a firearm into an occupied building. IAF, Tab 12 at 95-97. While the charges were pending, the appellant was indefinitely suspended.[2] *Id*. at 71, 73-75. On October 3, 2017, the charges were dismissed. *Id*. at 68-69. Thereafter, the agency terminated the appellant's indefinite suspension and placed her on administrative leave. *Id*. at 43, 45.

By letter dated December 3, 2017, the agency proposed the appellant's removal based on a charge of Conduct Unbecoming a Government Employee. *Id*. at 36-39. In a narrative in support of its charge, the agency stated:

> On June 2, 2017 . . . [the appellant] had an argument with [her] son . . . at [her] residence. [She] told [her son] that he could not use [her] vehicle or words to that effect. Soon after, he became angry and began throwing picture frames on the floor and stomping them. [She] then told him to leave the residence. According to the Jefferson County Sheriff's Office Field Incident Offense Report, [she] stated that as he was leaving [she] shot at him once with a .40

---

[2] The appellant did not appeal the indefinite suspension to the Board.

caliber Smith and Wesson pistol but did not hit him. Subsequently, officers from the Jefferson County[] Sheriff's Office responded to the scene and arrested [her]. Based on [this incident] . . . [she was] consequently charged with two felonies: (1) Attempted Murder and (2) Discharging a Firearm into An Occupied Building.

*Id*. at 36. After considering the appellant's response, the agency sustained her removal. *Id*. at 9-12, 29-30. Effective March 19, 2018, the appellant was removed from her position. IAF, Tab 1 at 11.

The appellant timely appealed to the Board challenging her removal.[3] *Id*. at 4. She also raised affirmative defenses of race and age discrimination, and retaliation for EEO activity. *Id*. During the hearing, the appellant withdrew her claim of race discrimination. IAF, Tab 22, Hearing Compact Disc (HCD); Petition for Review (PFR) File, Tab 1, Hearing Transcript (HT) at 4. Following the hearing, the administrative judge issued an initial decision in which she reversed the agency's action. IAF, Tab 23, Initial Decision (ID) at 1. Specifically, the administrative judge found that the agency did not prove by preponderant evidence its charge of conduct unbecoming a Government employee and that the appellant did not prove her claim of retaliation for EEO activity. ID at 3-8. In a footnote, the administrative judge stated that, in her prehearing submission, the appellant raised an affirmative defense of disability discrimination but, prior to the hearing, the appellant's counsel informed the administrative judge that she had withdrawn that defense.[4] ID at 3 n.2; IAF, Tab 19. The administrative judge ordered the agency to provide the appellant with interim relief if either party filed a petition for review. ID at 9.

---

[3] The appellant filed her appeal within 30 days of the final agency decision in her equal employment opportunity complaint alleging, among other things, that her removal constituted race, age, and disability discrimination and was taken in reprisal for her prior protected activity. IAF, Tab 4 at 6-28.

[4] The appellant's decision not to pursue such a claim is not documented anywhere else in the record. The appellant does not challenge the administrative judge's statement that this defense was withdrawn.

The agency has filed a petition for review to which the appellant has not responded.[5]  PFR File, Tab 1.  The agency has also stated that it has returned the appellant to a paid, nonduty status effective the date of the initial decision following a determination that returning her to work would be disruptive to agency operations, given the nature and seriousness of her misconduct.[6]  PFR File, Tab 1 at 19, Tab 3 at 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency proved the charge of conduct unbecoming a Government employee.</u>

In determining how charges are to be construed, the Board will examine the structure and language of the proposal notice.  *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 17 (2004).  In this regard, an adverse action charge usually has two parts:  (1) a name or label that generally characterizes the misconduct; and (2) a narrative description of the actions that constitute the misconduct. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 203 (1997).  The agency set forth a single charge in this case, conduct unbecoming a Government employee.  IAF, Tab 12 at 36.  Under its specification, the agency included a narrative description of the appellant's misconduct, procedural history, and penalty discussion.  *Id*. at 36-37.  In the narrative description of the appellant's misconduct, the agency cited the Jefferson County Sheriff's Office Field Incident Offense Report stating

---

[5] With its petition for review, the agency provided a transcript of the hearing in this case.  PFR File, Tab 1 at 22-152, HT at 1-131.  Although a hearing transcript does not meet the criteria of "new evidence" under 5 C.F.R. § 1201.115, it may nevertheless be considered by the Board as part of the record in this appeal.  *See Bain v. Department of Justice*, 15 M.S.P.R. 515, 517 n.1 (1983).

[6] In support of its statement, the agency submitted a Standard Form 52 showing the appellant's placement in an interim appointment in non-duty status.  PFR File, Tab 1 at 153-54.  The appellant has not challenged the agency's certification or the nature of the interim relief provided.  We discern no basis to find the agency in noncompliance with the interim relief order.  *See King v. Jerome*, 42 F.3d 1371, 1375 (Fed. Cir. 1994) (explaining that the Board's authority to review an agency's compliance with interim relief is limited to "whether the agency actually made an undue disruption determination and whether the employee has received appropriate pay and benefits").

that the appellant told the police officers that she shot a gun at her son as he was leaving the home. *Id*. at 36, 97.

In finding that the agency did not prove its charge, the administrative judge considered the appellant's testimony that she retrieved the gun to show it to her son and scare him into leaving her home; she did not see him when she stepped into the hallway; she surmised that he was gone because she saw the back door open; she nonetheless held the gun tightly due to her anxiety, which caused the gun to discharge. ID at 4, 6; HT at 91, 119, 123, 126-27 (testimony of the appellant). Applying the factors set forth in *Hillen v. Department of the Army,* 35 M.S.P.R. 453, 458 (1987), the administrative judge credited the appellant's explanation that the gun accidentally discharged and she did not fire the gun at anyone, noting that she was clear and forthright in describing the June 2, 2017 incident, and her testimony was consistent with her oral response to her proposed indefinite suspension.[7] ID at 6 & 6 n.4. In contrast, the administrative judge noted that the agency did not present testimony or signed or sworn declarations from any of the officers who were dispatched to the appellant's home on June 2, 2017, and instead relied solely on the statement the police officers attributed to the appellant in the Sheriff Office's report; she found that the agency's hearsay evidence was insufficiently probative, in light of the appellant's contradictory testimony, to support the conclusion that it was more likely than not the appellant shot at her son. ID at 4, 7.

---

[7] The statement the administrative judge refers to is a handwritten note added to the agency's summary of the appellant's oral reply to the proposed indefinite suspension by the appellant and her representative. IAF, Tab 12 at 78. That note states that the appellant had nothing additional to add "[o]ther than the fact, [she] did not fire a gun at anyone" and "[t]he gun accidentally discharged." IAF, Tab 12 at 78. In the appellant's written response to her proposed removal she stated that "[she] did not at any time tell the police [she] shot at [her] [s]on" and "[she] attempted to defend [herself], ensuring the agency knew that [it] was an unintentional act." IAF, Tab 12 at 29. At the hearing, the parties indicated that no claim of self-defense was raised. HT at 64-65, 106.

On review, the agency argues that conduct unbecoming is a broad charge that does not require a specific showing of intent and the supposed accidental nature of the weapon discharge does not negate the fact that the appellant engaged in misconduct. PFR File, Tab 1 at 10-12. The agency also argues that, contrary to the administrative judge's finding, it relied on other evidence besides the Sheriff Office's report, and that this evidence corroborates the report. *Id.* at 13-14. In addition, the agency challenges the administrative judge's decision to credit the appellant's explanation that the gun accidentally discharged on the basis that it is implausible, inconsistent with her prior statements, and contradicted by evidence in the record. *Id.* at 15-17.

To prove a charge of conduct unbecoming, the agency must show that the charged conduct occurred and that the conduct was improper, unsuitable, or detracted from the appellant's character or reputation. *See Miles v. Department of the Army*, 55 M.S.P.R. 633, 637 (1992). Ordinarily, intent is not an element of this offense. *King v. Frazier*, 77 F.3d 1361, 1363 (Fed. Cir. 1996). However, in its specifications, the agency may incorporate an element of intent by claiming that the employee engaged in intentional misconduct or that the conduct was improper because of the employee's intent. *Crouse v. Department of the Treasury*, 75 M.S.P.R. 57, 63 (1997), *reversed on other grounds and remanded sub nom. Lachance v. Merit Systems Protection Board*, 147 F.3d 1367, 1371-72 (Fed. Cir. 1998). If the agency does so, it must prove the employee's intent as an essential element of the charge. *Id.* at 64.

As noted above, in its charge, the agency cited the Sheriff Office's report, which describes the appellant having shot a gun, but the agency did not charge the appellant with firing the gun intentionally or purposely aiming the shot at her son. IAF, Tab 12 at 36. Rather, as stated by the agency, the charge centered on the appellant's discharge of her gun, irrespective of intent. HT at 77 (testimony of the deciding official). The only reference to intent in the proposal notice and

removal decision was directed at the penalty rather than the charge.[8]  IAF, Tab 12 at 10, 37.  The agency can properly consider intent in connection with the penalty, even if it was not an element of the charge.  *See Cross v. Department of the Army*, 89 M.S.P.R. 62, ¶ 10 (2001); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981).  We find that the charge, as crafted by the agency, does not incorporate an element of intent.

It is undisputed that the appellant, by her own admission, stated that she engaged in the alleged misconduct, i.e., she retrieved the gun from another room of her home after an argument with her son to scare him and the gun discharged while she was holding it, and her son was still inside the home.  HT at 119, 123, 126-27 (testimony of the appellant).

Based on the foregoing, we find that the appellant discharged a gun during an altercation with her son, which was the essence of the charge, and that the appellant's misconduct constitutes conduct that is improper, unsuitable, or detracts from one's character or reputation.  Thus, we find that the agency proved the charge of conduct unbecoming.

<u>The agency did not establish nexus between the appellant's off-duty misconduct and the efficiency of the service.</u>

Not every instance of off-duty misconduct bears a nexus to the efficiency of the service.  An agency may show nexus between off-duty misconduct and the efficiency of the service by three means:  (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's

---

[8] In the removal decision, the deciding official considered the appellant's explanation but observed that "whether . . . unintentional or not, [the appellant was] present where a firearm was discharged potentially causing physical harm and no evidence exists that someone other than [the appellant] discharged the firearm."  IAF, Tab 12 at 10.  She opined that, even if the appellant's act of retrieving and firing a loaded weapon was unintentional, she would still have sustained the charge because such an act was not a rational reaction to an argument with her son and raised serious concerns about her lack of judgment.  HT at 58, 62, 76-77, 82 (testimony of the deciding official).

trust and confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission. *Hoofman v. Department of the Army*, 118 M.S.P.R. 532, ¶ 16 (2012), *aff'd*, 526 F. App'x 982 (Fed. Cir. 2013).

In this case, the appellant's off-duty misconduct is not sufficiently egregious so as to automatically give rise to a presumption of nexus. As the deciding official noted, the appellant was charged with attempted murder and discharging a firearm into an occupied building, but the charges were dismissed because the State of Alabama filed a motion not to prosecute. IAF, Tab 12 at 22. The Board has found that the presumption of nexus was applicable in another case involving an off-duty shooting, noting that the appellant's shooting of his fiancée was violent and life-threatening in nature. *Backus v. Office of Personnel Management*, 22 M.S.P.R. 457, 460 (1984). This case is distinguishable from *Backus*, however. In this case, the appellant did not actually shoot anyone, and she was not charged with intentionally shooting the gun at her son.

The agency has also not made a showing that the appellant's misconduct adversely affected her job performance or that of her coworkers or the agency's trust and confidence in the appellant's job performance. The proposing and deciding officials testified that the appellant had no performance problems for the 2 months immediately after her arrest, and the proposing official noted that she was not aware of any other employee alleging that they had performance problems because of the appellant's arrest. HT at 25, 81 (testimony of the proposing and deciding officials). The proposing and deciding officials also cited the appellant's FY 2016 performance rating of Exceeds Expectations, which was completed after the appellant's arrest, as a significant mitigating factor. IAF, Tab 12 at 10, 23; HT at 37-38 (testimony of the proposing official). The deciding official nonetheless stated that the agency did not have trust and confidence in the appellant's ability to perform her duties as a Loan Specialist because the appellant failed to exhibit sound judgment and character, which was required for

her work involving contact with borrowers, participating banks, members of the business community, creditors, legal representatives, other Federal agencies, accountants, program officials in the Service Center, and other field offices. IAF, Tab 12 at 9-10; HT at 57-58 (testimony of the deciding official). However, we find that the deciding official's testimony with regard to "loss of confidence" is not persuasive. The appellant's job involved loan servicing and collection activities, IAF, Tab 12 at 136-37, and her misconduct did not arise out of her duties and was not related to those duties. The deciding official relies on an overly broad description of the appellant's job, and her conclusion is unsupported by specific evidence indicating that the appellant could not effectively carry out her duties. In this regard, it is significant that, as noted above, the record shows that the appellant's misconduct did not adversely affect her job performance. Regarding the deciding official's testimony that the appellant's misconduct could have made her colleagues feel unsafe around her, we discern no reason to base a nexus finding on such testimony because it is speculative and the agency presented no evidence that the appellant's colleagues objected to her continued employment or felt apprehensive in the workplace due to possible exposure to her misconduct. HT at 58-59 (testimony of the deciding official); *see Fisher v. Department of Health and Human Services*, 9 M.S.P.R. 2, 4-5 (1981) (finding that nexus should not depend on mere assertion or speculation that the appellant's off-duty conduct created an apprehension among his coworkers).

Finally, the agency has not made a showing that the appellant's misconduct interfered with or adversely affected the agency's mission. The proposing and deciding officials noted that agency employees have the responsibility to refrain from any activity, both on and off duty, that would interfere with effective operations or would have an adverse impact on the agency and its reputation. IAF, Tab 12 at 9-10, 37. However, they did not explain how the appellant's off-duty misconduct actually interfered with the agency's mission. With regard to the 2 months following the appellant's arrest, the proposing official noted that

she was not aware of any action by the appellant that negatively impacted the agency's mission. HT at 25 (testimony of the proposing official). We note that, although the Board has consistently found a nexus between off-duty criminal misconduct by law enforcement officers and the efficiency of the service, law enforcement officers, due to the nature of their duties, are held to a higher standard of conduct than other employees. *See, e.g.*, *Carlton v. Department of Justice*, 95 M.S.P.R. 633, ¶ 8 (2004). The appellant is not a law enforcement officer, and accordingly, she is not subject to the same standard. As such, we find that the agency failed to prove that the appellant's removal for off-duty misconduct promotes the efficiency of the service.

## The appellant abandoned her affirmative defense of age discrimination.

The appellant identified age discrimination as one of her affirmative defenses in her initial appeal form. IAF, Tab 1 at 4. Aside from this single instance, the appellant did not raise this claim in any of the other pleadings in the record below. As discussed below, we find that the appellant has abandoned this previously raised affirmative defense.

In *Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶¶ 17-18, we set forth a nonexhaustive list of factors for consideration when determining whether an appellant will be deemed to have waived or abandoned a previously raised affirmative defense. The factors include: (1) the thoroughness and clarity with which the appellant raised her affirmative defense; (2) the degree to which the appellant continued to pursue her affirmative defense in the proceedings below after initially raising it; (3) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when she was specifically afforded an opportunity to object and the consequences of her failure were made clear; (4) whether the appellant raised her affirmative defense or the administrative judge's processing of the affirmative defense claim in her petition for review; (5) whether the appellant was represented during the course of her appeal before the administrative judge and on petition for review,

and if she was not, the level of knowledge of Board proceedings possessed by the appellant; and (6) the likelihood that the presumptive abandonment of the affirmative defense was the product of confusion, or misleading or incorrect information provided by the agency or the Board. *Id.*, ¶ 18.

Notably, the appellant did not identify her claim of age discrimination as an issue in her prehearing submission. IAF, Tab 19 at 4. The appellant had an opportunity to object to the administrative judge's order and summary of prehearing conference that delineated the issues to be decided in the appeal, to the exclusion of all others, which did not include this claim. IAF, Tab 20 at 3-7. She did not do so. Additionally, the appellant did not file a response to the agency's petition for review or address the administrative judge's failure to adjudicate such a claim at any point. Throughout this appeal, the appellant was represented by an attorney, and there is no evidence that her abandonment of her affirmative defense was due to confusion or misleading or incorrect information provided by the administrative judge or the agency. As such, we find that, when weighing all these factors together, the appellant effectively abandoned the affirmative defense of age discrimination, and we will not consider this issue further.

We affirm the administrative judge's finding that the appellant failed to prove her affirmative defense of retaliation for her EEO activity, as modified to apply the proper standard.

Below, the appellant alleged that the agency's removal action was taken in retaliation for her EEO activity. IAF, Tab 1 at 4, Tab 19 at 4, Tab 20 at 3. The record shows that the appellant's underlying EEO activity involved claims of discrimination based on race, age, and disability. IAF, Tab 4 at 6.

In finding that the appellant failed to prove her affirmative defense of reprisal for her EEO activity, the administrative judge discussed both the motivating factor standard, citing to *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 41 (2015), *overruled in part on other grounds by Pridgen v.*

*Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25, and the standard applied by the Board for general reprisal claims, citing to *Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986). ID at 7. She applied the *Warren* standard, finding that the appellant did not establish a nexus between her EEO complaint and her removal. ID at 8. However, the *Warre* standard does not apply to claims of retaliation for Title VII EEO activity. *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016). Rather, to prove such a claim, the appellant must show that retaliation was a motivating factor in the agency's decision.[9] *Pridgen*, 2022 MSPB 31, ¶¶ 19-21, 30. To obtain full relief under the statute, including reinstatement, back pay, and damages, an appellant must show that retaliation was a "but-for" cause of the agency's action. *Id.*, ¶ 22. An appellant may prove a claim of retaliation under Title VII through direct evidence, circumstantial evidence, or some combination of the two. *Id.*, ¶ 24.

We find that that administrative judge's application of the *Warren* standard does not constitute reversible error because the evidence of record is insufficient to support the appellant's claim, even analyzed under the correct evidentiary standards and framework.[10] *See Panter v. Department of the Air Force*,

---

[9] The appellant's EEO activity may have involved a claim of disability discrimination. Such a claim arises under the Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 355, which incorporates the standards for determining whether there has been a violation of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336, 104 Stat. 327, as amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553. *See* 29 U.S.C. § 791(f); 29 C.F.R. § 1614.203(b). A more stringent but-for causation standard applies to claims of retaliation for engaging in activity protected by the Rehabilitation Act. *See Pridgen*, 2022 MSPB 31, ¶¶ 46-47. Because the appellant has failed to meet the less stringent motivating factor standard, she would necessarily fail to meet the but-for standard.

[10] The administrative judge's discussion of the *Warren* standard in advising the appellant of her burdens of proof regarding her affirmative defenses did not harm the appellant. The *Warren* standard is higher than the motivating factor standard for proving retaliation under *Pridgen*. In particular, in order to meet the "genuine nexus" requirement under *Warren*, an appellant must prove, as relevant here, that the adverse employment action was taken because of the protected activity. *Mattiso*n, 123 M.S.P.R. 492, ¶ 8. When a statute prohibits retaliation "because of" protected EEO activity, the employee's claim is subject to a but-for causation standard. *Pridgen*, 2022 MSPB 31,

22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis to reverse an initial decision). We agree with the administrative judge that the appellant failed to prove her affirmative defense of retaliation for EEO activity.

## ORDER

We ORDER the agency to cancel the removal and restore the appellant, effective March 19, 2018. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition

---

¶¶ 44-46. "But-for" causation is a higher burden than "motivating factor" causation." *Id.*, ¶¶ 21 n.4, 22, 28.

should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b).

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your

---

[12]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:                    _____

                                  Gina K. Grippando

                                  Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.